# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

WILLIAM FARADAY,
      Plaintiff,

    v.

EDWARD BLANCHETTE,
      Defendant.

CIVIL ACTION NO.
3:03cv1520 (SRU)

## RULING ON MOTION FOR SUMMARY JUDGMENT

William Faraday, a prisoner in the custody of the Connecticut Department of Corrections ("DOC"), brings this suit pursuant to 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment right to be free from cruel and unusual punishment. Faraday claims that defendant Dr. Edward Blanchette, Clinical Director of the DOC and the sole remaining defendant in this case, was deliberately indifferent to his known medical needs – specifically, several herniated migrated discs in his lower back – by failing to: (1) order an MRI, (2) provide him with palliative care to manage his pain and discomfort, and/or (3) order surgery to relieve and reduce his back pain. I previously denied summary judgment, finding sufficient evidence in the record from which a jury could find that Blanchette was deliberately indifferent to Faraday's medical needs. *Faraday v. Lantz ("Faraday I")*, 2005 WL 3465846, at *6 (D. Conn. 2005). At the request of the parties, I subsequently agreed to hold the case in abeyance, pending the outcome of Faraday's state habeas petition before the Connecticut Supreme Court.

Blanchette moved for summary judgment on the ground that collateral estoppel bars Faraday's federal claims against him, pointing to the Connecticut Supreme Court's recent decision to dismiss Faraday's state habeas petition: *Faraday v. Commissioner of Corrections ("Faraday II")*, 288 Conn. 326, 344-45 (2008). At oral argument of Blanchette's motion, I

orally denied the motion, subject to the preparation and filing of a written ruling.  For the reasons

that follow, my oral order is vacated and summary judgment is granted in favor of Blanchette.

I.      **Background**

        I presume familiarity with the comprehensive factual background set forth in *Faraday I*,

2005 WL 3465846 at *1-4.  I will, therefore, only briefly summarize the pertinent facts, adding

additional relevant facts that have occurred subsequent to my first decision in this case.

        Since his incarceration began in October 1999, Faraday has consistently reported back

pain to the DOC medical staff and has filed numerous requests for MRIs, an egg crate mattress

pad, a second pillow, and any other necessary medical care for his herniated disks, including

surgery.  After his numerous internal request forms and medical grievances were denied, in

December 2002, Faraday filed a state habeas petition claiming that his conditions of incarceration

were inhumane or dangerous because he was being denied necessary medical attention for his

back pain.  He sought the following medical care for his back pain: (1) An MRI to confirm his

herniated migrated disk condition; (2) an operation to "remedy the condition;" (3) a foam pad,

such as an egg crate mattress pad; and (4) a second pillow.

        In April 2003, the state habeas court held a hearing on Faraday's petition.  Blanchette

testified that he did not believe the request for an MRI was necessary based on several factors,

including that Faraday's back pain "comes and goes" and that he did not meet the typical criteria

that called for surgery, and for that reason, declined to have an MRI performed on Faraday.

Although Faraday claimed to have had an MRI in 1992, neither party was able to recover the

results of any test, despite a diligent search of Faraday's medical records.  Blanchette testified

that the results of the 1992 MRI were nonetheless irrelevant because his present conditions did

not warrant an MRI.  Blanchette further testified that an egg crate mattress pad and a second pillow were not medically necessary and he was not inclined to make an exception in Faraday's case.  At the conclusion of the hearing, the habeas court dismissed Faraday's petition, concluding that the evidence did not support Faraday's claims.

Faraday filed a motion for reconsideration, which the court granted.  At the second hearing in February 2005, the court considered the results of the 1992 MRI and an MRI that was performed on Faraday in October 2003.  The respondent submitted an affidavit from Blanchette, in which he stated that he had reviewed the 2003 MRI and that it confirmed his "clinical impression" of Faraday's condition, namely, that Faraday had "mild to moderate degenerative joint disease with no clinically significant disc herniation" and was not, in his opinion, a candidate for surgery.  Def. Ex. B at ¶ 10.

On the basis of the results of the 1992 and 2003 MRI reports, the habeas court concluded that the Commissioner had exhibited deliberate indifference to Faraday's medical needs because "there is a substantial possibility that the petitioner has a herniated disk and it is not a major thing to have him examined and evaluated by a neurosurgeon."  Def. Ex. E at 24.  The habeas court stated that the two MRI results, showing "a bulge at L4-5" and "a herniated disk at L5-S1," were sufficient to require a neurological evaluation by a specialist.  *Id.*  The habeas court concluded that the decision "not to go forward with a simple neurological evaluation at the UCONN Health Center which is under contract with the DOC to provide medical care to the Department of Corrections inmates . . . amounts to deliberate indifference to the medical needs of the petitioner."  *Id.* at 25.  In April 2006, the Connecticut Appellate Court affirmed the grant of habeas relief.

On August 12, 2008, the Connecticut Supreme Court reversed, concluding that the habeas court could not have "reasonably" found that the Commissioner was deliberately indifferent to Faraday's serious medical needs.  *Faraday II*, 288 Conn. at 341.  The Court first set forth the test for establishing an Eighth Amendment claim arising out of inadequate medical care, stating that a prisoner must prove deliberate indifference to his serious medical needs by demonstrating that: (1) objectively, the alleged deprivation was "sufficiently serious," and (2) the government official acted "with a sufficiently culpable state of mind."  *Id.* at 338.  On the second prong, "[a]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 338-39 (internal quotation omitted).

The Court assumed for purposes of the appeal that Faraday's chronic back ailment satisfied the first prong of the deliberate indifference standard requiring an objectively serious medical condition.  *Id.* at 336 n.11., 339 n.12.

Focusing on the second prong of the deliberate indifference standard, the Court concluded that the record before the habeas court was not sufficient to support its finding that the respondent had acted with the requisite culpability.  *Id.* at 343.  First, the Court noted there was no evidence that Blanchette's recommended care and treatment did not meet the applicable medical standard of care.  *Id.* at 341.  Acknowledging that an inmate need not always present expert evidence that his treatment fell below the requisite standard of care, the Court nevertheless concluded that the evidence on Faraday's condition "did not so clearly and unequivocally indicate[] the need for" an evaluation by a neurologist or neurosurgeon so as to permit the habeas

-4-

court to have reasonably found that such an evaluation was necessary in the absence of any expert testimony. *Id.* ("[W]e are not persuaded that the habeas court was qualified, on the basis of the evidence presented, to render its own opinion that such an evaluation was medically necessary."). Therefore, "[h]aving failed to produce evidence tending to establish that the care he received was medically inappropriate, the petitioner cannot prevail on his claim that the respondent's conduct was constitutionally inadequate." *Id.* at 342.

The Court further concluded that, even assuming Blanchette had disregarded an excessive risk to Faraday's health, the record was devoid of any evidence upon which the habeas court could have found that "Blanchette was aware of facts from which the inference could be drawn that a substantial risk of serious harm to the petitioner existed and that Blanchette actually drew the inference." *Id.* at 343 (internal quotations and alterations omitted). According to the Court, it was significant that the record contained no evidence tending to suggest that Blanchette "did not 'sincerely and honestly' believe" his treatment of Faraday was medically justifiable. *Id.* (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). "Thus, even if the evidence was sufficient to establish that Blanchette's care and treatment of the petitioner had been inadequate, there was no evidence indicating that Blanchette knew that his refusal to have the petitioner examined by a specialist created an undue risk of serious harm to the petitioner." *Id.* Having concluded that there was not enough evidence to support the habeas court's finding that the Blanchette's refusal to have Faraday examined by a neurosurgeon or neurologist constituted an Eighth Amendment violation, the Court reversed and remanded with instructions to dismiss the petition for a writ of habeas corpus. *Id.* at 345. According to court records, the lower habeas court entered judgment of dismissal on Faraday's habeas petition on October 15, 2008.

## II.   Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

-6-

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## III.   Discussion

Blanchette moves for summary judgment on the ground that the doctrine of collateral estoppel bars Faraday's section 1983 suit, which arises out of the same claims that formed the basis of his state habeas petition. Blanchette contends that my 2005 ruling denying summary judgment, which found that there was sufficient evidence in the record upon which a reasonable jury could find that Blanchette was deliberately indifferent to Faraday's medical condition, does not preclude granting his present motion for summary judgment on the basis of collateral

estoppel because the prior ruling was not a final judgment on the merits.  Because the

Connecticut Supreme Court's ruling was a final judgment on the merits of Faraday's claims,

Blanchette argues that it estopps Faraday from pursuing the same claims in this pending action.

      A.     <u>Collateral Estoppel v. Res Judicata</u>[1]

Before addressing Blanchette's argument regarding collateral estoppel, it is helpful to first

distinguish that doctrine from the similar, yet distinct doctrine of res judicata.  The doctrine of res

judicata, or claim preclusion, "provides that 'a final judgment on the merits of an action

precludes the parties or their privies from relitigating issues that were or could have been raised

in that action.'"  *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*,

449 U.S. 90, 94 (1980)).  Collateral estoppel, or issue preclusion, on the other hand, provides that

"'once a court has decided an issue of fact or law necessary to its judgment, that decision may

preclude relitigation of the issue in a suit on a different cause of action involving a party to the

first case.'"  *Id.* (quoting *Allen*, 449 U.S. at 94).

In *Burgos*, a case having a similar procedural posture to the instant case, the plaintiff – an

inmate in the New York State prison system – brought a section 1983 claim against corrections

officers for their failure to protect him from fellow inmates during a May 1989 inmate attack.  *Id.*

at 788.  The plaintiff had previously brought the same claims in a state habeas corpus proceeding,

which was resolved against him.  *Id.*  The defendants moved for summary judgment, arguing that

the plaintiff's federal suit was barred by res judicata.  *Id.*  The Second Circuit concluded that,

pursuant to New York's law on res judicata, because the plaintiff had been precluded from

---

[1] Because there is some confusion in the parties' briefing on the difference between the
two doctrines, it is necessary to clarify and distinguish between the two doctrines and to
determine whether either doctrine is applicable to preclude Faraday's claims in this case.

recovering monetary damages in his state habeas case, res judicata would not bar his subsequent

federal claims.  *Id.* at 790-92.  The Court, however, remanded on the question whether collateral

estoppel would bar the plaintiff's claims because it was unclear from the district court's decision

whether it had actually considered the applicability of that doctrine.  *Id.* at 793.  As the Court

noted, "[t]hat [the plaintiff] was unable to receive damages in his state habeas petition may

relieve him of res judicata application, but it does not necessarily change the fact that a court has

already decided the issues he now raises. . . . [W]hat matters is whether there was a full

opportunity to litigate identical issues."  *Id.* at 792.

       B.      <u>Connecticut Law on Res Judicata & Collateral Estoppel</u>

      When determining the preclusive effect of a state court judgment, a court must apply the

preclusion law of the rendering state.  *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

Thus, Connecticut law dictates the preclusive effect of the Connecticut Supreme Court's decision

in *Faraday II* to the present suit.

      Like the plaintiff in *Burgos*, Faraday's federal suit is not barred by res judicata.  First,

Connecticut habeas law does not permit the recovery of money damages on a state habeas

petition.  *See, e.g., Morgan v. Warden*, 2003 WL 21040504, at *6 (Conn. Super. Ct. 2003)

("[W]hen the relief sought is monetary damages, a habeas court cannot award monetary damages

to a petitioner who has successfully proven a constitutional violation."); *Messenger v. O'Neil*,

1997 WL 275579, at *1 (Conn. Super. Ct. 1997) ("This writ [of habeas corpus] does not provide

for seeking monetary damages.").  Thus, because Faraday was precluded from seeking money

damages in his state habeas petition, res judicata cannot bar his section 1983 claim for monetary

damages.

Notwithstanding the inapplicability of res judicata, as in *Burgos*, it is still necessary to determine whether collateral estoppel bars Faraday's claims.  In Connecticut, to be subject to collateral estoppel, an issue must have been: (1) "fully and fairly litigated," (2) "actually decided," and (3) "necessary to the judgment" in the first action, *Virgo v. Lyons*, 209 Conn. 497, 501 (1988)*,* and (4) "identical" to the issue to be decided in the second action. *State v. Joyner*, 255 Conn. 477, 490 (2001).  An issue has been fully and fairly litigated if the party against whom collateral estoppel is asserted had a "full and fair opportunity" to litigate that issue in the prior proceeding.  *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 306 (1991).  "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined."  *Joyner*, 255 Conn. at 490 (internal quotation omitted).  "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered."  *Id.* (internal quotation omitted).

In addition, Connecticut has abandoned the rule of mutuality, meaning that even parties that were not actually adverse to one another in the prior proceeding may nonetheless assert collateral estoppel.  *Torres v. City of Waterbury*, 249 Conn. 110, 135 (1999).  The key determinant whether a non-mutual party may assert collateral estoppel is fairness; in other words, "'[a] party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue.'"  *Id.* (quoting Restatement (Second) of Judgments § 29).  Therefore, the fact that Blanchette was not technically a party to Faraday's habeas proceeding will not preclude him from asserting collateral estoppel; the primary issue is whether it would be *fair* to prevent Faraday

-10-

from relitigating the issue.

In his state habeas proceeding, Faraday alleged that Blanchette's refusal to provide him with certain medical care relating to his chronic back pain was a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  As relief, his habeas petition sought an MRI examination, surgery to relieve his back pain, a foam mattress pad, and permission to keep a second pillow in his cell.  In order to prevail on his petition, Faraday had to prove that Blanchette was deliberately indifferent to his serious medical needs, specifically his chronic back pain.  The Connecticut Supreme Court, in a final judgment on the merits, concluded that he had failed to present sufficient evidence that Blanchette's medical treatment and care was constitutionally inadequate and ordered his petition dismissed.  *Faraday II,* 288 Conn. at 345.

Examining the claims Faraday presents in his section 1983, it is clear that collateral estoppel applies here.  In this case, Faraday alleges that Blanchette was deliberately indifferent to his known medical condition, specifically his chronic back pain, by refusing to conduct further diagnostic testing or otherwise provide treatment, such as palliative care or surgery, to alleviate his pain.  That is the identical issue that was actually and necessarily decided by the Connecticut Supreme Court in *Faraday II*.  Specifically, the Connecticut Supreme Court considered Faraday's Eighth Amendment claim arising out his allegations of inadequate medical care by Blanchette and determined that the evidence was not sufficient to support a finding that Blanchette had been deliberately indifferent to a serious medical condition.  Furthermore, as the sole basis for his state habeas petition, the Court's decision on the Eighth Amendment inadequate medical treatment issue was necessary to judgment.

Finally, and most significantly, Faraday had a full and fair opportunity to present his

-11-

Eighth Amendment claims in his state habeas proceeding.  That he did not present enough

evidence to sufficiently establish a viable Eighth Amendment claim against Blanchette does not

detract from the fact that Faraday had an opportunity to make his case to the best of his ability in

the state habeas case.[2]  *See Charles v. Maleh*, 2006 WL 581206, at *5 (D. Conn. 2006) (holding

that collateral estoppel precluded the plaintiff-inmate from relitigating the identical claims of

inadequate medical treatment raised in his state habeas petition, which had been previously

resolved against him).  Because the purpose of collateral estoppel is to prevent a party from

relitigating issues of law and fact that have already been determined in a prior proceeding, I

conclude that Faraday cannot relitigate his Eighth Amendment claims against Blanchette in this

case.

   The only remaining issue to be decided is what impact, if any, my prior summary

judgment ruling in 2005 has on the preclusive effect of the Connecticut Supreme Court's ruling

in *Faraday II*.  At oral argument, I raised the question whether my prior ruling means that

collateral estoppel based on *Faraday II* is not applicable to Faraday's federal claims because I

had previously determined that the evidence in the record of this case *was* sufficient to survive a

motion for summary judgment.  Because a denial of summary judgment is not a final judgment, it

cannot have preclusive effect on the Connecticut Supreme Court and cannot bar the application

of collateral estoppel based on the ruling from the first case to reach final judgment on the merits.

*See Kay-R Elec. Corp. v. Stone & Webster Constr. Co.*, 23 F.3d 55, 59 (2d Cir. 1994) (holding

---

   [2] Nor does it matter that the Connecticut Supreme Court was the only court of the four
courts (Connecticut Superior Court, Connecticut Appellate Court, Connecticut Supreme Court,
and this court) to reach the conclusion that Faraday's Eighth Amendment claim failed.  As the
first final judgment rendered, its decision has preclusive effect.

that denial of summary judgment has no preclusive effect for purposes of collateral estoppel because it is not a final judgment on the issue in dispute and cannot be appealed).  Therefore, as a final judgment on the merits, *Faraday II* operates to bar relitigation of Faraday's pending Eighth Amendment claims against Blanchette in his federal suit.

The Connecticut Supreme Court held that Faraday *had not* proved an Eighth Amendment violation – not that he *could not* prove such a violation.  The reason Faraday's claim failed is immaterial; the pertinent fact is that Faraday was given a full and fair opportunity to develop the record in his state habeas proceeding.  The Connecticut Supreme Court's ruling that the habeas record was insufficient to prove an Eighth Amendment violation does not mean that Faraday's underlying claim actually lacks merit, but it does mean that Faraday does not get a second chance to prove that claim in federal court.  Having failed to adequately make his case in the state habeas proceeding, despite having had the full opportunity to present any expert testimony or other evidence on his medical condition and Blanchette's course of treatment, Faraday is estopped from relitigating that identical issue in his federal case.

## IV.    Conclusion

For the foregoing reasons, my oral ruling denying summary judgment is vacated and the motion for summary judgment (**doc**. **#72**) is **GRANTED**.  The clerk is directed to close the file.

It is so ordered.

Dated at Bridgeport, Connecticut, this 26th day of January 2009.

/s/ Stefan R. Underhill
                Stefan R. Underhill
                United States District Judge

-13-